**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1792-24

JOSE NUNEZ and ALTAGRACIA
RODRIGUEZ DE NUNEZ, AS
ADMINISTRATOR AND
ADMINISTRATRIX AD
PROSEQUENDUM OF THE
ESTATE OF EMMA NUNEZ,
THEIR DAUGHTER, and JOSE
NUNEZ AND ALTAGRACIA
RODRIGUEZ DE NUNEZ,
INDIVIDUALLY,

     Plaintiffs-Appellants,

v.

THE RARITAN BAY MEDICAL
CENTER, their servants, agents, and
employees, HACKENSACK
MERIDIAN HEALTH, their
servants, agents, and employees, and
DR. MARY M. NATH,

     Defendants-Respondents.

_____

Argued April 14, 2026 – Decided August 11, 2026

Before Judges DeAlmeida and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-4018-23.

Timothy Foley argued the cause for appellants (Foley & Foley, and Rudikh & Associates, LLC, attorneys; Zlata Rudikh, Alexander Glovich, Timothy J. Foley and Sherry L. Foley, of counsel and on the briefs).

Gary Riveles argued the cause for respondents Raritan Bay Medical Center, a Division of HMH Hospital Corp. and Hackensack Meridian Health, Inc. (MacNeill O'Neill & Riveles, LLC, attorneys; Gary Riveles, of counsel; Anelia Dikovytska Brown, on the brief).

Renee J. Sherman argued the cause for respondent Dr. Mary M. Nath (Ruprecht Hart Ricciardulli & Sherman, LLP, attorneys; Renee J. Sherman, on the brief).

PER CURIAM

Plaintiffs Jose Nunez and Altagracia Rodriguez de Nunez, individually, and in their capacities as Administrator and Administratrix ad Prosequendum of the Estate of Emma Nunez, appeal from four Law Division orders: (1) a January 14, 2025 order dismissing their complaint against defendant Mary M. Nath, M.D., with prejudice, for failure to file a timely notice of claim as required by N.J.S.A. 59:8-8(a), a provision of the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to :12-3; (2) a January 14, 2025 order granting summary judgment to defendants Raritan Bay Medical Center, a Division of HMH Hospital Corp.[1] (RBMC) and

_____

[1] Pled as The Raritan Bay Medical Center.

Hackensack Meridian Health, Inc. (HMH); (3) a January 14, 2025 order denying their motion for leave to file a late notice of claim; and (4) a January 14, 2025 order denying their motion for leave to file an amended complaint. We affirm.

I.

On July 16, 2022, Rodriguez de Nunez, then in the third trimester of a pregnancy, presented at the emergency department of RBMC in Perth Amboy for treatment. She was accompanied by Nunez, the father of her child, and was admitted to the maternity department. While at RBMC, Rodriguez de Nunez was treated by RBMC nursing staff, resident Carolyn Kwon, M.D., and Nath, the attending obstetrician.

Rodriguez de Nunez gave birth to her daughter Emma via caesarean section while under Nath's care. The delivery was performed by a non-party physician. Emma died on July 17, 2022, shortly after delivery.[2]

RBMC and HMH were related private entities. At the time she treated Rodriguez de Nunez, Nath was employed by Rutgers, The State University of New Jersey (Rutgers), a public entity. She worked as an attending obstetrician and member of the Rutgers clinical instruction faculty at RBMC through a

---

[2] Because Emma shared a surname with her father we refer to her by her first name. We intend no disrespect.

A-1792-24

professional services contract between RBMC and Rutgers. Nath was paid by Rutgers for the services she provided at RBMC.

On July 18, 2023, plaintiffs, on behalf of themselves and Emma's estate, filed a six-count complaint in the Law Division alleging medical malpractice and wrongful death. They alleged, among other things, Nath failed to appreciate Emma was at increased risk and to perform a timely emergency cesarean delivery of the child, resulting in her death. The complaint does not refer to Nath as a public employee. Plaintiffs did not file a notice of claim with Rutgers pursuant to the TCA prior to filing the complaint.

On October 25, 2023, Nath filed an answer. She did not allege any defenses available to public employees under the TCA.

On November 8, 2023, Nath filed an amended answer, in which she alleged defenses under the TCA. Specifically, Nath alleged:

Twelfth Separate Defense

This defendant pleads the benefit of those exemptions from liability, immunities from liability, limitations upon damage and preconditions of suit as are set forth in Title 59 of the New Jersey Statutes Annotated . . . .

4

Thirteenth Separate Defense

Plaintiffs' claims are barred or otherwise limited by the provisions of Title 59 of the New Jersey Statutes Annotated . . . .

Fourteenth Separate Defense

The complaint is barred for failure to give timely notice of claim or to present a claim in accordance with <u>N.J.S.A.</u> 59:8-1, <u>et. seq.</u>

Fifteenth Separate Defense

The complaint and the proceedings resulting therefrom and any recovery resulting therefrom are barred by the [TCA], N.J.S.A. 59:8-1 through -8, for failure to provide a timely written notice of tort claim in the official form promulgated by Rutgers, the State University pursuant to N.J.S.A. 59:8-6.

Plaintiffs did not file a notice of claim or seek leave to file a late notice of claim in response to the TCA-related defenses alleged in Nath's amended answer.

On April 30, 2024, Nath served responses to the interrogatories propounded on her by plaintiffs. In response to Interrogatory No. 12, "If you intend to rely on any statute . . . state the exact title and section," Nath listed, among other statutes, "Tort Claims Act (N.J.S.A. Section 59:1-1, et seq.)." In addition, in response to Interrogatory No. 13, asking for her insurance information, Nath stated:

5

At the time of the relevant events in this case, this defendant was an employee of a body corporate and politic and an instrumentality of the State of New Jersey, a public entity, and therefore N.J.S.A. Section 59:1-1 through 59:12-3 define the parameters and applicable immunities governing any recovery for tortious conduct or injury which may be had against public entities and public employees.

Nath attached to her interrogatory answers her curriculum vitae (CV). The first two positions listed on the CV were:

Clinical Teaching Faculty:  01/2007 – Present   RUTGERS UNIVERSITY
                                                through RWJ Medical School

Attending Physician:        01/2007 – Present   Raritan Bay Medical Center
                                                Perth Amboy Division

The CV also stated Nath had a "[h]ospital affiliation" with Palisade Medical Center (PMC) in North Bergen.

Plaintiffs did not file a notice of claim or seek leave to file a late notice of claim in response to the TCA-related references in Nath's interrogatory responses. Nor did they serve supplemental discovery requests seeking clarification of Nath's employer at the time she treated Rodriguez de Nunez.

On August 15, 2024, Nath moved to dismiss the complaint with prejudice for plaintiffs' failure to file a timely notice of claim pursuant to the TCA. Conceding for purposes of the motion her public employment was not evident at the time she treated Rodriguez de Nunez, Nath argued plaintiffs were made

6

aware of her public employment on November 8, 2023, when she filed the amended answer, or, at the latest, April 30, 2024, when she filed her interrogatory responses. Plaintiffs failed to file a notice of claim within ninety days of either of those dates.

On September 5, 2024, plaintiffs opposed the motion and cross-moved for leave to file a late notice of claim and an amended complaint. Their proposed amended complaint reflected the addition of Rutgers and PMC as defendants. In support of their motion, plaintiffs argued Nath was not wearing a medical coat or other uniform with Rutgers insignia when she treated Rodriguez de Nunez, and Nath, other medical providers, hospital staff, and plaintiffs' translator did not inform them Nath was a public employee. Nath opposed plaintiffs' cross-motion.

On September 11, 2024, RBMC and HMH moved for summary judgment. They argued there was no genuine dispute Nath was an employee of Rutgers, not RBMC or HMH, when she treated Rodriguez de Nunez. They noted no employee of RBMC or HMH was named as a defendant and argued the only claims plaintiffs could allege against them would be based on an agency relationship with Nath. Thus, they argued dismissal of plaintiffs' claims against Nath required dismissal of their claims against RBMC and HMH.

7

On October 11, 2024, the court issued an oral decision denying Nath's motion without prejudice to permit limited discovery and supplemental briefing with respect to her employment status and the amount of control, if any, RBMC had over her at the time she treated Rodriguez de Nunez. The court also stated it would allow the parties to file supplemental briefing addressing whether Nath's motion to dismiss is barred under equitable doctrines or waiver.

An October 15, 2024 order memorialized the court's decision. The court adjourned all the remaining motions.

On January 10, 2025, after limited discovery and supplemental briefing, the court issued an oral decision granting Nath's motion to dismiss the complaint with prejudice. The court found plaintiffs' claims arose on the day Emma died, July 17, 2022. However, because Nath did not wear a uniform identifying her as a State employee or notify plaintiffs orally or in writing of her public employment while treating Rodriguez de Nunez, the court applied the discovery rule to determine the accrual date of plaintiffs' claims for purposes of the TCA. The court found plaintiffs' claims accrued at the latest on April 30, 2024, when Nath served her responses to plaintiffs' interrogatories. The court found the responses identified Nath as a public employee and stated she was claiming the immunities and protections of the TCA.

A-1792-24

The court noted plaintiffs took no steps after receiving Nath's interrogatory responses to determine the basis on which she claimed to be a public employee and entitled to the protections in the TCA. The court rejected plaintiffs' argument they were not on notice of Nath's status as a public employee until she produced proof of her public employment on November 12, 2024, in response to the supplemental discovery permitted by the court when it denied Nath's motion without prejudice. Nor was the court persuaded by plaintiffs' argument Nath's CV was confusing because it suggested she was privately employed at RBMC when she treated Rodriguez de Nunez.

The court found, after receipt of the interrogatory responses, there was no impediment to plaintiffs' counsel filing supplemental discovery requests to clarify Nath's employment status while treating Rodriguez de Nunez or to filing a protective notice of claim if they believed Nath's employment status was uncertain. The court concluded, "[H]ow could I find that [production of] documents you didn't even ask for . . . was the triggering date? If you had asked for them and they weren't produced until the end of November, different story, but you never asked for them."

The court also found plaintiffs' counsel offered no justification for not having reacted to Nath's assertion of TCA-based defenses in her amended

answer, filed five months before she served her interrogatory responses. The court explained:

> [F]or whatever reasons, despite the . . . amended answer, and I know when I get amended answers, and we all do, we go, okay, what's different, and we know it's never going to be easy, but we also have to compare. And in this particular case [the defenses] went from ten to 15. So it's real easy to say, alright, what are the extra defenses that were read? And this is what I did. Right? And when I then look to those . . . additional defenses, they are the four Title 59 defenses. So I don't think they were buried. They were by way of an amended [answer], which . . . should raise a flag to say what is being amended and why?

However, giving plaintiffs the most favorable interpretation of the record, the court used an April 30, 2024 accrual date – the date of Nath's interrogatory responses – to determine the ninety-day period in which they were required to file a notice of claim. The court found ninety days from April 30, 2024 to be "no later than the end of July," 2024. The court also found plaintiffs did not file a notice of claim within that period.

Turning to plaintiffs' motion for leave to file a late notice of claim, which was not filed until September 5, 2024, the court found:

> [I]n making the finding that the accrual date is back in April, no later, the [c]ourt finds that there was nothing being hidden from the plaintiffs as to the defendant's alleged employment status. She put it out there in a

10

certification that I am an employee and I am seeking the protections of Title 59.

> As the [c]ourt understands [it], . . . extraordinary circumstances . . . is when there's something that is preventing you from being able to file the notice of claim, and there really was nothing that prevented [plaintiffs] from filing this notice of claim upon being given the information at the end of April, there was no information that was being withheld from you that would have prevented you from filing it.

> . . . .

> . . . And I can find no case that says that there is a certified answers to interrogatories that say[, "]I'm an employee of the [S]tate[,"] and no action is taken, and then someone can claim extraordinary circumstances having done nothing until after the motion is filed. I do not believe that that is extraordinary circumstances.

> Unfortunately, I think that falls into attorney error, attorney inattention, and our Supreme Court is very clear . . . that attorney inattention is not an extraordinary circumstance.

Next, the court rejected plaintiffs' argument Nath acted outside the scope of her public employment when she treated Rodriguez de Nunez. The court found Nath was acting within the scope of her contractual responsibilities as a public employee by treating, and supervising a resident's treatment of, Rodriguez de Nunez. Noting an absence of evidence of actual malice or wanton or willful disregard of Rodriguez de Nunez's health and safety, the court rejected

plaintiffs' claim Nath acted outside her contractual relationship by engaging in willful misconduct.

The court also was not convinced Nath's motion to dismiss should be barred under laches, waiver, or equitable estoppel. The court found Nath alleged early in the litigation she was entitled to the immunities and protections in the TCA. In addition, the court found no evidence Nath's counsel withheld discovery from plaintiffs to hide Nath's status as a public employee. The court noted plaintiffs' counsel "for whatever the reasons, didn't believe . . . Nath when she said she was a [S]tate employee" and could not, therefore, rely on Nath's participation in the matter for approximately a year prior to moving to dismiss as an improper inducement not to file a notice of claim. The court, therefore, denied plaintiffs' motion for leave to file a late notice of claim and granted Nath's motion to dismiss the complaint with prejudice.

Finding plaintiffs made no direct allegations against RBMC and HMH, and given its decision dismissing the claims against Nath because she was employed by Rutgers, the court granted summary judgment to those defendants. The court also stated it would deny plaintiffs' motion for leave to file an amended complaint.

A-1792-24

The court entered four orders, each dated January 14, 2025, memorializing its decisions. This appeal followed.

Plaintiffs argue the motion court erred because: (1) it found plaintiffs' claims accrued on April 30, 2024, when Nath served her interrogatory responses, as opposed to November 12, 2024, when she produced a copy of her employment agreement with Rutgers; (2) it concluded plaintiffs did not demonstrate extraordinary circumstances warranting leave to file a late notice of claim; (3) Nath's reliance on the TCA was barred by waiver, laches, and/or equitable estoppel; (4) genuine issues of material fact remain in dispute with respect to whether Nath was an employee of RBMC and acted outside her public employment, precluding entry of summary judgment; (5) Nath is not entitled to TCA immunity given her actions were willful misconduct or outrageous; and (6) plaintiffs should have been granted leave to file an amended complaint.

II.

A.    Failure to file a Timely Notice of Claim

The TCA modifies the doctrine of sovereign immunity and establishes the parameters within which an injured party may recover for the tortious acts of public entities and employees. Feinberg v. State of N.J., Dep't of Envt'l Protection, 137 N.J. 126, 133 (1994). The statute's "guiding principle" is "that

13                                                                    A-1792-24

immunity from tort liability is the general rule and liability is the exception."

D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013) (quoting

Coyne v. State Dep't of Transp., 182 N.J. 481, 488 (2005) (internal quotations

omitted)). The TCA, therefore, "imposes strict requirements upon litigants

seeking to file claims against public entities." McDade v. Siazon, 208 N.J. 463,

468 (2011).

Among those is the requirement the claimant, prior to initiating suit, file

a notice of claim describing "[t]he date, place and other circumstances of the

occurrence or transaction which gave rise to the claim asserted[,]" "[a] general

description of the injury, damages or loss incurred[,]" "[t]he name or names of

the public entity, employee or employees causing the injury, damages or loss, if

known[,]" and "[t]he amount claimed as of the date of the presentation of the

claim, including the estimated amount of any prospective injury, damage, or

loss, insofar as it may be known at the time of the presentation of the claim

. . . ." N.J.S.A. 59:8-4(c) to (f).

The notice of claim

> shall be presented . . . not later than the 90th day after
> accrual of the cause of action. . . . The claimant shall
> be forever barred from recovering against a public
> entity or public employee if:

a. The claimant failed to file the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in [N.J.S.A.] 59:8-9 . . . .

[N.J.S.A. 59:8-8.]

N.J.S.A. 59:8-9 provides that

[a] claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 . . . , may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 . . . or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter . . . .

"Ascertaining the timeliness of a [TCA] notice requires a simple, three-step sequential analysis that never changes." McNellis-Wallace v. Hoffman, 464 N.J. Super. 409, 416 (App. Div. 2020) (citing Beauchamp v. Amedio, 164 N.J. 111, 118 (2000)). "The first step is to determine when the cause of action accrued in accordance with N.J.S.A. 59:8-1." Ibid. "The discovery rule is part and parcel of such an inquiry because it can toll the date of accrual." Ibid. (quoting Beauchamp, 164 N.J. at 118) (internal quotation marks omitted).

"Once the date of accrual is ascertained, one can proceed to the second step, which 'is to determine whether a notice of claim was filed within ninety days' as required by N.J.S.A. 59:8-8." Ibid. (quoting Beauchamp, 164 N.J. at 118). "'If not, the third task is to decide whether extraordinary circumstances exist justifying a late notice' under N.J.S.A. 59:8-9." Ibid. (quoting Beauchamp, 164 N.J. at 118-19).

"Accrual shall mean the date on which the claim accrued . . . ." N.J.S.A. 59:8-1. A claim accrues under the TCA "on the date of the accident or incident that gives rise to any injury, however slight, that would be actionable if inflicted by a private citizen." Beauchamp, 164 N.J. at 123. "In the context of a medical malpractice action, a cause of action generally accrues on the date that the alleged act or omission occurred." Baird v. Am. Med. Optics, 155 N.J. 54, 65 (1998). A wrongful death claim accrues on the date of death. Iaconianni v. N.J. Turnpike Auth., 236 N.J. Super. 294, 298 (App. Div. 1989).

"The discovery rule is part and parcel of [our] inquiry because it can toll the date of accrual." McNellis-Wallace, 464 N.J. Super. at 416 (quoting Beauchamp, 164 N.J. at 118) (internal quotation marks omitted). The discovery rule is grounded in "the unfairness of barring claims of unknowing parties," Caravaggio v. D'Agostini, 166 N.J. 237, 245 (2001) (quoting Mancuso v.

16

Neckles, 163 N.J. 26, 29 (2000)), and tolls the accrual of a cause of action where "injured parties reasonably are unaware that they have been injured, or, although aware of an injury, do not know that the injury is attributable to the fault of another," id. at 245-46 (quoting Baird, 155 N.J. at 66).

"The question in a discovery rule case is whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another." Caravaggio, 166 N.J. at 246. The "knowledge of fault for purposes of the discovery rule has a circumscribed meaning:  it requires only the awareness of facts that would alert a reasonable person exercising ordinary diligence that a third party's conduct may have caused or contributed to the cause of the injury and that conduct itself might possibly have been unreasonable or lacking in due care." Savage v. Old Bridge-Sayreville Med. Grp., P.A., 134 N.J. 241, 248 (1993). The standard is awareness of fault that is merely possible, not legally certain, provable, or probable. Ibid. We review de novo the motion court's determination of an accrual date. Manalapan Realty, LP v. Twp. Comm., 140 N.J. 366, 378 (1995).

We have reviewed the record and find no basis on which to disturb the motion court's conclusion plaintiffs' claims accrued on April 30, 2024, when Nath served her responses to interrogatories.  As noted above, in response to

Interrogatory No. 12, Nath identified the TCA as a statute on which she intended to rely. In addition, in response to Interrogatory No. 13, Nath stated:

> At the time of the relevant events in this case, this defendant was an employee of a body corporate and politic and an instrumentality of the State of New Jersey, a public entity, and therefore N.J.S.A. Section 59:1-1 through 59:12-3 define the parameters and applicable immunities governing any recovery for tortious conduct or injury which may be had against public entities and public employees.

Plaintiffs argue these responses did not put them on notice of Nath's public employment because she did not identify Rutgers as her employer. Although Rutgers is listed as an employer in Nath's attached CV, plaintiffs argue the reference was confusing because the CV also stated Nath was an attending physician at RBMC. They argue they did not send a notice of claim to Rutgers because they believed their claims were based on Nath's acts while serving as an attending physician at RBMC.

Plaintiffs' arguments are unconvincing. As Nath's interrogatory responses expressly state, she intended to rely on the TCA and its "applicable immunities governing any recovery for tortious conduct or injury which may be had against public entities and public employees." Surely, the responses put plaintiffs' counsel on notice Nath considered plaintiffs' claims to relate to her acts as a Rutgers employee, not as an RBMC employee. In addition, as the motion court

18

pointed out, any confusion on the part of plaintiffs' counsel could have been addressed through supplemental discovery requests focused on Nath's employment status when she treated Rodriguez de Nunez. Yet, plaintiffs' counsel made no attempt to gather information from Nath to clarify her stated intent to rely on the TCA and its immunity provisions.

Moreover, plaintiffs' counsel's claim of confusion is undermined by Nath's unequivocal assertion of TCA defenses in her amended answer. In her fourteenth separate defense, Nath stated, "The complaint is barred for failure to give timely notice of claim or to present a claim in accordance with N.J.S.A. 59:8-1, et. seq." In her fifteenth separate defense, she stated, "The complaint and the proceedings resulting therefrom and any recovery resulting therefrom are barred by the [TCA], N.J.S.A. 59:8-1 through -8, for failure to provide a timely written notice of tort claim in the official form promulgated by Rutgers, the State University pursuant to N.J.S.A. 59:8-6." It is difficult to conceive of a clearer statement of Nath's intention to argue plaintiffs' claims were barred for failure to file a timely notice of claim with Rutgers. If the amended answer did not put plaintiffs' counsel on notice of Nath's public employment at the time she treated Rodriguez de Nunez, it certainly provided the context necessary to

dissipate any claimed confusion over the meaning of her subsequent interrogatory responses.[3]

Plaintiffs' argument they were not on notice of Nath's public employment until she produced her contract with Rutgers is unavailing. They cite no precedent for the proposition the time to file a notice of claim is tolled until a defendant who has identified herself as a public employee in her answer and interrogatory responses produces proof of her public employment. Nor would such an interpretation of the TCA make sense. Once Nath filed her amended answer and interrogatory responses, plaintiffs' counsel had more than sufficient cause to file a notice of claim. If plaintiffs' counsel were, as they profess, confused by Nath's CV, they had an obligation to promptly file a protective notice of claim while they followed up with supplemental discovery requests. To demand proof of public employment as the evidence necessary to start the

---

[3] Nath did not file a cross-appeal from the motion court's finding plaintiffs' claims accrued on April 30, 2024. We do not, therefore, have occasion to decide whether the appropriate accrual date was November 8, 2023, when Nath filed her amended answer unequivocally alleging plaintiffs failed to file a notice of claim with Rutgers.

ninety-day notice-filing period would broadly expand the narrowly defined and carefully crafted waiver of sovereign immunity in the TCA.[4]

Ninety days from April 30, 2024 was July 29, 2024. Plaintiffs did not file a notice of claim with Rutgers on or before July 29, 2024. We therefore find no basis on which to disturb the motion court's conclusion plaintiffs did not file a timely notice of claim.

## B. Denial of Leave to File a Late Notice of Claim

We turn to the denial of plaintiffs' motion for leave to file a late notice of claim. We review the motion court's application of the extraordinary circumstances exception in N.J.S.A. 59:8-9 for an abuse of discretion. McDade, 208 N.J. at 476-77. "Although deference will ordinarily be given" to the motion court's fact findings, "the court's conclusions will be overturned if they were reached under a misconception of the law." D.D., 213 N.J. at 147.

"Until 1994, the [TCA] applied a fairly permissive standard when claimants sought to file notices of late claims. Claimants had to demonstrate only 'sufficient reasons' for the delay, and that the State would not be prejudiced

---

[4] We note the filing of a notice of claim is an uncomplicated endeavor with no penalty for a party who files a notice later determined to be unnecessary. We see no reason why, after a party claims to be a public employee who intends to rely on the TCA and its notice provisions, counsel would wait for proof of the party's public employment to file a notice of claim.

as a result." Lowe v. Zarghami, 158 N.J. 606, 625 (1999). "The Legislature enacted a more demanding standard when the TCA was amended in 1994 to require that the 'sufficient reasons' for late filing must constitute 'extraordinary circumstances.'" Ibid.; see L. 1994, c. 49, § 5 (eff. June 23, 1994). The 1994 amendment "raise[d] the bar for the filing of a late notice" of claim. Rogers v. Cape May Cnty. Off. of Pub. Def., 208 N.J. 414, 428 (2011).

The TCA does not define what constitutes "extraordinary circumstances," leaving "for a case-by-case determination . . . whether the reasons given rise to the level of 'extraordinary' on the facts presented." Lowe, 158 N.J. at 626 (citations and internal quotations omitted). However, as the Supreme Court explained,

> [t]he Legislature's grant of authority to trial courts to permit a late notice in the exercise of their discretion does not equate with a grant of authority to override the statute's declaration of purpose or to substitute a lesser standard of proofs for the extraordinary circumstances demanded by the 1994 amendment to the statute itself. Trial courts, in exercising their statutory authority, and appellate courts, in reviewing those decisions, must ensure that their decisions are faithful to the overall legislative framework in order that the statute's essential purposes be preserved and not eroded through excessive or inappropriate exceptions. Courts faced with applications for leave to file a late notice of claim, therefore, must proceed with their evaluation mindful of the Legislature's direction that the proofs

22

> demonstrate circumstances that are not merely sufficient, but that they instead be extraordinary.
>
> [D.D., 213 N.J. at 148-49.]

The party seeking leave to file a late notice of claim bears the burden of establishing extraordinary circumstances justifying the late filing. Lowe, 158 N.J. at 625.

From April 30, 2024, when the claims accrued under the motion court's generous finding, to July 29, 2024, when the statutory ninety-day period expired, no impediment existed to plaintiffs' filing a notice of claim. For the reasons stated above, we are unpersuaded by plaintiffs' claim that after April 30, 2024, they had "no reason to believe" Nath was a public employee when she treated Rodriguez de Nunez. During the relevant ninety-day period, plaintiffs' counsel was in possession of Nath's amended answer and her interrogatory responses, both of which unequivocally stated she was a public employee, she intended to rely on the TCA, and plaintiffs had not filed a notice of claim. If plaintiffs' counsel refused to accept these allegations at face value, the allegations at the very least were sufficient to raise a suspicion Nath was a public employee when she treated Rodriguez de Nunez. Plaintiffs' counsel offers no convincing explanation for their failure to serve supplemental discovery requests addressing

23

Nath's employment status or file a protective notice of claim, even if they doubted her allegations were true.

The few instances in which published precedents recognize of extraordinary circumstances do not apply here. For example, the record does not demonstrate disclosure of a public employee's involvement was withheld from plaintiff by another public entity. See Mendez v. S. Jersey Transp. Auth., 416 N.J. Super. 525, 534 (App. Div. 2010) (finding extraordinary circumstances where a videotape depicting the involvement of a municipal ambulance in a motor vehicle accident that injured plaintiff was withheld by a public highway authority until after expiration of the ninety-day notice period). Here, Nath first identified herself as a public employee in her November 8, 2023 amended answer, filed less than four months after the complaint was served, and reaffirmed her public employment in her April 30, 2024 interrogatory responses.

Nor was there confusion as to whether a state or federal agency employed Nath. See Ventola v. N.J. Veteran's Mem'l Home, 164 N.J. 74, 82 (2000) (finding extraordinary circumstance where plaintiff was under the mistaken impression that a veterans' residential care facility was operated by the federal government). Plaintiffs' failure to file a timely notice of claim cannot be attributed reasonable reliance by counsel on precedent from this court that

24

arguably supported their interpretation of the TCA's notice requirement.  See Beauchamp, 164 N.J. at 122-23.  Finally, plaintiffs did not prepare a timely notice of claim that was filed with the wrong public entity while another claimant filed a timely notice of claim arising from the same incident naming plaintiffs as injured parties with the correct public entity, two factors found to be a "rare case" constituting extraordinary circumstances in O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 350-52 (2019).

Because there was no impediment to plaintiffs' filing a notice of claim from April 30, 2024 to July 29, 2024, we affirm the motion court's conclusion plaintiffs did not establish extraordinary circumstances warranting leave to file a late notice of claim.  We recognize Nath likely would suffer no prejudice as the result of the filing of a late notice of claim.  Because plaintiffs did not demonstrate extraordinary circumstances for the late filing, the lack of prejudice to Nath is not relevant to our analysis.

We are not persuaded by plaintiffs' argument Nath's failure to comply with the Court's instructions in Lowe, 158 N.J. at 631, mandates we reverse the motion court's denial of her motion for leave to file a late notice of claim.  In Lowe, a physician employed by the University of Medicine and Dentistry of the State of New Jersey (UMDNJ), a public entity protected by the TCA, was

assigned to a private hospital pursuant to an affiliation agreement. 158 N.J. at 612. He treated a patient on two occasions at the private hospital while acting in his capacity as a public employee. Id. at 611-12. The patient later filed a complaint against the physician alleging medical malpractice without having first filed a notice of claim. Id. at 613. In response to a motion to dismiss the complaint for failure to file a notice of claim, the patient cross-moved for leave to file a late notice of claim. Ibid.

When the matter reached the Supreme Court, the patient argued, in part, extraordinary circumstances justified leave to file a late notice of claim because "by practicing at affiliated private hospitals, UMDNJ faculty obscured their public employment. As public employees, those physicians are entitled to notice under the [TCA], but their patients are unaware that notice is required." Id. at 625.

In addition to determining the physician was a UMDNJ employee while providing services at the private hospital, the Court addressed the patient's extraordinary circumstances argument as follows:

> Although the exact identity of the [physician] was known, his status as a public employee was obscured by his apparent status as a private physician. Plaintiff's failure to file a notice of claim arose not from any lack of diligence . . . . What is unusual about this case . . . is that unlike most cases involving public entities and

26

public employees, the defendant-doctor[ was] performing tasks associated generally with private practice and not public service.

.  .  .  .

The circumstances in this case qualify as "extraordinary." . . . There is no evidence supporting the conclusion [the patient] knew [the physician] was an UMDNJ employee. Although [the patient] was aware of the identity of the potential defendant, [she] had no reason to suspect that her doctor was even associated with a public entity. . . . [The physician] does not recall wearing his UMDNJ badge to his meeting with [the patient]; he does not recall discussing his employment status.

[Id. at 629-30.]

In addition to finding the patient was entitled to leave to file a late notice of claim, the Court held:

To resolve patients' doubts surrounding the employment status of their physicians, UMDNJ must require clinical professors employed by them to advise their patients, both orally and in writing, that they are employees of UMDNJ. Such notice should be given to a patient as soon as practicable. It also would be helpful if clinical professors[] wore badges identifying themselves as UMDNJ employees. Those steps, if taken, together with this holding that clinical professors are UMDNJ employees, should make patients more aware that their physicians are public employees to notice under the TCA.

[Id. at 631.]

27

On the same day it issued its opinion in Lowe, the Court issued an opinion in the companion case, Eagan v Boyarsky, 158 N.J. 632 (1999). Eagan also concerned a medical malpractice claim brought against physicians employed by UMDNJ who treated the plaintiff at a private hospital through an affiliation agreement. Id. at 634-35. The physicians moved to dismiss the complaint because the plaintiff failed to file a notice of claim. Id. at 638. The Court found the physicians were public employees to whom the TCA applied. Id. at 639-40.

Turning to the patient's request for leave to file a late notice of claim, the Court found, although he acted promptly to pursue his claim, he "had no reason to suspect that his doctors were even associated with a public entity." Id. at 642. The Court found the patient was entitled to file a late notice of claim given that "he was thwarted in his action because the employment status of his doctors was obscured." Ibid. The Court also reiterated its holding in Lowe regarding notification of the public employment status of UMDNJ physicians treating patients at private hospitals. Id. at 643. See also Ventola, 164 N.J. at 83 ("[A]fter Lowe, . . . [p]resumably, if State health-care providers wish to rely on the notice provisions of the TCA, they will have made their status clear to patients.").

A-1792-24

Defendants conceded for purposes of the motions Nath did not wear a uniform displaying indicia of her public employment while treating Rodriguez de Nunez and did not advise her or Nunez orally or in writing she was a public employee. Plaintiffs argue Nath's failure to comply with the directive in <u>Lowe</u> precludes her from relying on the notice provisions of the TCA. We do not view the holding in <u>Lowe</u> to require so drastic a remedy.

To the extent Nath's public employment initially was not expressly disclosed to plaintiffs in contravention of the Court's instructions in <u>Lowe</u>, the omission was cured when Nath filed the amended answer and served her interrogatory responses. The motion court addressed the delayed disclosure of Nath's public employment by applying the discovery rule to find plaintiffs' claims accrued on April 30, 2024. The adjustment of the accrual date provided plaintiffs with the statutory ninety-day period to file a notice of claim. Although we do not endorse Rutgers' failure to comply with <u>Lowe</u> and trust the university will ensure its future practices follow the Court's instructions regarding notice, we conclude the motion court's adjustment of the accrual date of plaintiffs' claims provided adequate opportunity for them to file a timely notice of claim.

C.    Equitable Preclusion of Nath's Motion to Dismiss

We are not persuaded by plaintiffs' argument Nath should be equitably barred from seeking dismissal of the complaint. Plaintiffs' primary argument is Nath's participation in this matter for approximately a year prior to moving to dismiss the complaint was an inexcusable delay, warranted application of laches, constituted a waiver of her rights under the TCA, or was grounds for application of equitable estoppel. They also argue she misrepresented her employment status.

Laches "is an equitable doctrine, operating as an affirmative defense that precludes relief when there is an 'unexplainable and inexcusable delay' in exercising a right, which results in prejudice to another party." Fox v. Millman, 210 N.J. 401, 417 (2012) (quoting Cnty. of Morris v. Fauver, 153 N.J. 80, 105 (1998)). "It is an equitable remedy that we have frequently described as '"an equitable defense that may be interposed in the absence of the statute of limitations."'" Id. at 418 (quoting Borough of Princeton v. Bd. of Chosen Freeholders, 169 N.J. 135, 157 (2001) (internal citation omitted)).

"Waiver is the 'intentional relinquishment or abandonment of a known right or privilege.'" Mazdabrook Commons Homeowners' Ass'n v. Khan, 210 N.J. 482, 505 (2012) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

30

"The essential elements of equitable estoppel are a knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation would probably induce reliance, and reliance by the party seeking estoppel to his or her detriment." In re Johnson, 215 N.J. 366, 379 (2013) (quoting O'Malley v. Dep't of Energy, 109 N.J. 309, 316-17 (1987)). Equitable estoppel "is designed to ensure that [harm] is born[e] by the party who 'made the injury possible or could have prevented it.'" First Union Nat'l Bank v. Nelkin, 354 N.J. Super. 557, 568 (App. Div. 2002) (quoting Foley Mach. Co. v. Amland Contractors, Inc., 209 N.J. Super. 70, 75 (App. Div. 1986)).

Our review of the record reveals no support for application of these equitable doctrines to preclude Nath from moving to dismiss the complaint for plaintiffs' failure to file a notice of claim. Nath alleged she was a public employee and intended to rely on the notice of claim provisions of the TCA in her amended answer filed approximately four months after the complaint was filed. She reiterated her allegation she was a public employee and restated her intention to rely on the notice of claim provisions of the TCA in the interrogatory responses she served five months later. Nath moved to dismiss the complaint a little more than ninety days after she served her interrogatory responses.

31

Nothing in the record suggests Nath engaged in an unexplainable and inexcusable delay in exercising her rights. She promptly alleged her public employment status and intent to rely on the TCA. Perhaps aware she had not complied with Lowe, Nath presumably awaited plaintiffs' reaction to her filings. She created two opportunities – first after the filing of the amended answer and again after service of her interrogatory responses – for plaintiffs to file a notice of claim and argue their claims accrued, and the ninety-day period for filing a notice claim began, when they received the information in those filings. They also could have moved for leave to file a late notice of claim during those periods.

In the absence of any acts by plaintiffs to file a notice of claim or even inquire about her status as a public employee, Nath moved to dismiss the complaint. We do not view the facts in this matter as the equivalent of the long delay and active use of discovery that resulted in the equitable estoppel of a defendant's motion to dismiss in Knorr v. Smeal, 178 N.J. 169, 178-180 (2003). Contrary to plaintiffs' claim to have been prejudiced by Nath's actions, she timely placed the issue of her public employment and plaintiffs' failure to file a notice of claim squarely before plaintiffs. Nath cannot be faulted for their failure to react.

32

D. Summary Judgment in Favor of RBMC and HMH

We find no support in the record for plaintiffs' argument summary judgment in favor of RBMC and HMH was not warranted because genuine issues of material fact remained in dispute with respect to whether Nath was acting as a public employee when she treated Rodriguez de Nunez.

We review a grant of summary judgment de novo, applying the same standard as the motion court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the motion court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

A-1792-24

"Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

All the evidence in the motion record supports the conclusion Nath was an employee of Rutgers, not RBMC or HMH, when she treated Rodriguez de Nunez. Nath was paid by Rutgers for the work she performed at RBMC. Her duties as a Rutgers clinical instructor included supervising residents at RBMC as they treated patients. There is no evidence RBMC controlled Nath's provision of medical care to Rodriguez de Nunez. The employment contracts in the record unequivocally support the motion court's conclusion Nath was a public employee.

E.    Willful Misconduct

We need not tarry long on plaintiffs' argument Nath is not entitled to immunity because she engaged in willful misconduct or outrageous conduct. In support of their argument plaintiffs rely on N.J.S.A. 59:3-14(b). The statute

34

provides: "Nothing in this act shall exonerate a public employee from the full measure of recovery applicable to a person in the private sector if it is established that his conduct was outside the scope of his employment or constituted . . . actual malice." Ibid.

The statute concerns the measure of damages available when a claim is established against a public employee in certain circumstances. Before any provision of the TCA concerning the measure of damages can apply, a plaintiff must first satisfy the notice of claim requirements allowing her to pursue and establish a claim against a public official. Having failed to file a timely notice of claim, plaintiffs are "forever barred from recovering against a . . . public employee . . . ." N.J.S.A. 59:8-8.

F.      Denial of Motion for Leave to File Amended Complaint

"Rule 4:9-1 requires that motions for leave to amend be granted liberally." Kernan v. One Wash. Park Urban Renewal Assocs., 154 N.J. 437, 456 (1998). "That exercise of discretion requires a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 2.2.1 on R. 4:9-1 (2026). Courts are thus "free to refuse leave to amend when the newly asserted

claim is not sustainable as a matter of law . . . when a subsequent motion to dismiss must be granted." Notte, 185 N.J. at 501 (quoting Interchange State Bank v. Rinaldi, 303 N.J. Super. 239, 256-57 (App. Div. 1997)). We review the denial of a motion for leave to file an amended complaint for abuse of discretion. Franklin Med. Assocs. v. Newark Pub. Schs., 362 N.J. Super. 494, 506 (App. Div. 2003).

We see no mistaken exercise of discretion in the motion court's denial of plaintiffs' motion for leave to file an amended complaint. Plaintiffs sought to add Rutgers and PMC as defendants in the amended complaint. However, as noted above, plaintiffs' failure to file a timely notice of claim forever barred their claims against Rutgers. In addition, the record is void of evidence connecting PMC to Nath's treatment of Rodriguez de Nunez at RBMC.

To the extent we have not specifically addressed any of plaintiffs' remaining claims, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hawley

Clerk of the Appellate Division

A-1792-24